UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lisa Kiefer, *et al.*,

          Plaintiffs,

v.

Simonton Building Products, LLC, *et al.*,

          Defendants.

Civ. No. 16-3540 (RHK/SER)
**MEMORANDUM OPINION AND ORDER**

---

Alex M. Nelson, Michael J. Lowder, Benson, Kerrane, Storz & Nelson, PC, Bloomington, Minnesota, for Plaintiffs.

Jerry W. Blackwell, Benjamin W. Hulse, S. Jamal Faleel, Blackwell Burke, PA, Minneapolis, Minnesota, for Defendants.

---

**INTRODUCTION**

After windows in their homes fogged, Plaintiffs Lisa Kiefer, Adam Arvig, Lynette Andersen, Sheri Squillace, Justin Smith, Joan Corby, and the Koch Family Trust (collectively "Plaintiffs") commenced this putative class action against Defendants Simonton Building Products, LLC, Simonton Windows, Inc., Simonton Industries, Inc., and Simonton Windows & Doors, Inc. (collectively, "Simonton"), the window manufacturers. They allege *inter alia* claims for negligent product design and manufacture, breach of express and implied warranties, and fraud. Presently before the Court is Simonton's Motion to Dismiss. For the reasons that follow, the Court will grant its Motion.

## BACKGROUND

The Complaint alleges the following facts, which are taken as true for purposes of the Motion. Simonton manufactures and sells glass windows and other products for residential and commercial use. (Compl. ¶¶ 1, 25.) Simonton's windows incorporate an insulated glass unit ("IGU"), which "often contains . . . low emissivity metallic films on the inside of the panes of glass, as well as inert argon gas between the panes[,] . . . [and] a single seal to keep air from passing in or out of the glass assembly." (Id. ¶ 26.) Plaintiffs own homes with Simonton windows in which the IGUs have failed, causing "condensation and corrosion that obscures the windows." (Id. ¶¶ 1, 56.) As a result, each Plaintiff submitted a claim under Simonton's warranties. (Id. ¶ 60.)

Simonton warrants its windows against "non-conformities in material and workmanship" for certain periods, depending upon the particular window and its use. (Id. ¶ 46; see also Hulse Decl. Exs. 1, 2 (copies of the warranties).)[1] Simonton's warranties generally provide that "Simonton will repair or replace any Product that fails to meet [the warranties]. . . . Simonton may [also] refund the purchase price . . . if in [its] opinion such repair or replacement is not commercially practicable or reasonable or cannot timely be made." (Compl. ¶¶ 46–47.) Specifically,

> [the] installed and sealed [IGU] is warranted against permanent and material obstruction of vision from film formation caused by dust or moisture in the air space between the glass for the Warranty Period . . .

---

[1] Window purchasers receive one of two warranties—the Limited Lifetime Warranty or the Double-Lifetime Limited Warranty—depending upon the type of window. (Compl. ¶¶ 3, 47.) The warranties are quoted extensively in the Complaint and are thus properly considered by the Court. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (court may consider any materials "necessarily embraced" by the pleadings in resolving motion to dismiss).

[and] [i]f such defects occur . . . Simonton will provide a replacement [IGU] at no charge to the Warranty Holder.

(Id. ¶ 46.) Under the heading, "This Limited Warranty's Exclusive Remedy," the warranties provide:

> If the Product or any components fail to meet this Limited Warranty, Simonton's sole obligation is to either (as Simonton elects): a) repair the component . . . or b) provide replacement component(s) to the Warranty Holder or a Simonton designated dealer . . . or c) refund the Warranty Holder's purchase price. . . . This is the Warranty Holder's sole and exclusive remedy for the Product under this Limited Warranty. By example but not limitation, this Limited Warranty does not cover . . . labor for removing, reinstalling, refinishing [the] Product (or other materials that are removed, reinstalled, or refinished to repair or replace the Product).

(Id.; Hulse Decl. Ex. 1.) The disclaimer of labor costs appears multiple times. (Hulse Decl. Exs. 1–2.) The warranties also disclaim any other express or implied warranties and, under the heading "Limitation of Liability," reiterate:

> Simonton's sole liability under this limited warranty is replacement, repair, or refund of the purchase price as set forth above. In no event will Simonton be liable for incidental, consequential, indirect, special, or punitive damages including, but not limited to, damage of any kind to a premises, loss of product use, reinstallation, labor, removal . . . emotional distress claims, or claims of third parties for such damages, whether based on contract,[] tort (including, but not limited to, strict liability or negligence) or otherwise.

(E.g., id. Ex. 1.)

Simonton addressed Plaintiffs' warranty claims by providing new IGUs free of charge, shipped to a local distributor, where "Plaintiffs (or their repair contractors) were required to pick the new, replacement IGUs up . . . and have the new IGUs installed themselves." (Compl. ¶ 61.) At their own expense, Plaintiffs have hired or will hire window contractors to remove their defective IGUs and install the replacements. (Id.

3

¶ 62.)  They commenced this action on October 17, 2016, alleging *inter alia* that Simonton breached their warranties by selling defective windows and refusing to cover the cost of installing replacements, and that certain statements in Simonton's promotional materials were fraudulent.  Simonton now moves to dismiss the Complaint.  The Motion has been fully briefed, and the Court heard argument on February 24, 2017.  The Motion is ripe for disposition.

### STANDARD OF DECISION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" do not suffice.  Id. (internal quotation marks omitted).  To decide a Rule 12(b)(6) motion, a court may consider the pleadings themselves, materials physically attached to the pleadings, and documents "necessarily embraced" by them.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); Fed. R. Civ. P. 10(c).

### ANALYSIS

Simonton argues it provided Plaintiffs their exclusive remedy by replacing their defective IGUs free of charge and, as such, Plaintiffs are entitled to no relief.  Notably,

4

Plaintiffs acknowledge Simonton provided them free replacement IGUs. (Compl. ¶ 61.) Yet they allege a litany of claims seeking damages for the defective IGUs, arguing that Simonton's warranties are unconscionable or fail of their essential purpose. In the Court's view, their arguments lack merit.

Both sides ask the Court to apply the Uniform Commercial Code ("UCC"), which governs contracts for the sale of goods such as Simonton's windows. Minn. Stat. § 336.2-102. It provides:

> If the court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

§ 336.2-302; accord Ark. Code § 4-2-302; N.Y. U.C.C. Law § 2-302; Wis. Stat. § 402.302.[2] The unconscionability doctrine has procedural and substantive aspects, and the party invoking the doctrine must demonstrate *both* to avoid the terms of a contract. Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965); Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988); Wisconsin Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155, 165 (Wis. 2006). A contract is procedurally unconscionable where a party demonstrates it "had no meaningful choice but to deal with the other party and to accept the contract as offered." Sports & Travel Mktg., Inc. v. Chicago Cutlery Co., 811 F. Supp. 1372, 1380 (D. Minn. 1993) (Doty, J.).[3] A contract is

---

[2] Plaintiffs reside in Arkansas, Minnesota, New York, and Wisconsin. As relevant here, the law of each state is substantially the same, particularly as it relates to the UCC (a *uniform* statute).

[3] See also GGNSC Holdings, LLC v. Lamb ex rel. Williams, 487 S.W.3d 348, 356–57 (Ark.

substantively unconscionable if its terms are "unreasonably favorable" to one party. RJM Sales & Mktg., Inc. v. Banfi Prod. Corp., 546 F. Supp. 1368, 1375 (D. Minn. 1982). Unconscionability is assessed at the time of contract formation, and the purpose of the doctrine is to "prevent[] oppression and unfair surprise," not to "disturb[] the allocation of risks" based upon superior bargaining power. Minn. Stat. § 336.2-302 & cmt. 1.

Here, Plaintiffs allege the warranties "were unconscionable at the time they were entered . . . due to a disparity of bargaining power between the parties, the fact that the [warranties] were non-negotiable and were 'take it or leave it' . . . and because of the misleading, contradictory, and illusory warranty coverage afforded." (Compl. ¶ 51.) This is the extent of their unconscionability analysis (see Mem. in Opp'n 8), and in the Court's view, it is not sufficient to carry the day. Plaintiffs have not attempted to articulate whether they assert procedural or substantive unconscionability and, in any event, their bare allegations render neither plausible.

Most notably, Plaintiffs have not pleaded that they were compelled to purchase Simonton windows and enter into the warranties because they had no other options. In fact, the Complaint is woefully unspecific as to the precise circumstances under which Plaintiffs acquired the windows and entered into the warranties, suggesting they may not have purchased the windows directly. (E.g., Compl. ¶ 56 (Averring "all of the windows . . . were . . . sold by Simonton to either Plaintiffs or their predecessors in interest."); id. ¶ 57 ("Simonton made . . . marketing misrepresentations . . . [that] *the purchaser*" relied

---

2016) ("Procedural unconscionability [exists] where there is an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party."); Gillman, 534 N.E.2d at 828; Wis. Auto Title Loans, Inc., 714 N.W.2d at 167.

upon (emphasis added).).) On such scant allegations, Plaintiffs have not plausibly alleged they had "no meaningful choice but to deal with" Simonton and accept the warranties. Sports & Travel Mktg., Inc., 811 F. Supp. at 1380; see also Minn. Stat. § 336.2-302 cmt. 1 (unconscionability is assessed "at the time of the making of the contract."). Moreover, merely pointing out that the warranties were non-negotiable and that the parties possessed unequal bargaining power is insufficient to void these contracts. E.g., Webb v. R. Rowland & Co., 800 F.2d 803, 807 (8th Cir. 1986) ("The use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision."); Siebert v. Amateur Athletic Union of U.S., Inc., 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006) (Rosenbaum, J.); Harper Tax Servs., Inc. v. Quick Tax Ltd., 686 F. Supp. 109, 112 (D. Md. 1988). Fortunately so, as it is difficult to imagine the swath of contracts Plaintiffs' logic would invalidate. As one court observed:

> That [an] agreement was an adhesion contract—of pre-specified form and not actually negotiated—does not lead to the conclusion that it was unconscionable: parties routinely purchase products without expecting to negotiate the terms of sale with the seller and there is nothing unusual in this limitation of damages, it being common in . . . commercial agreements.

Harper Tax Servs., Inc., 686 F. Supp. at 112 (internal citations and quotations omitted).

With this argument cast aside, all that remains is Plaintiffs' assertion that the warranties were "misleading, contradictory, and illusory." This appears germane to a substantive unconscionability analysis but, in the Court's view, this bare allegation cannot salvage Plaintiffs' claim. Plaintiffs have failed to explain how the warranties were misleading—on their face, they limit the buyer's remedy to repair, replacement, or refund

7

at Simonton's option, and they conspicuously, repeatedly disclaim installation-related costs. Plaintiffs have likewise failed to explain how their warranty coverage was illusory or unreasonably favorable to Simonton, particularly considering their receipt of free replacement IGUs. Indeed, the UCC expressly contemplates the limitation of remedies in this manner: UCC Section 2-719 provides that parties may agree to "limit or alter the measure of damages recoverable . . . as by limiting the buyer's remedies . . . to repair and replacement of nonconforming goods or parts," and it further provides that "resort to [such] a remedy . . . is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." For this reason, courts have routinely enforced repair-or-replace limitations. See, e.g., Transp. Corp. of Am. v. Int'l Bus. Machines Corp., 30 F.3d 953, 959–60 (8th Cir. 1994); Consol. Data Terminals v. Applied Digital Data Sys., Inc., 708 F.2d 385, 392 n.6 (9th Cir. 1983) (applying New York law: "remedy limited to repair is not unconscionable per se"). For these reasons, the Court concludes Plaintiffs have not plausibly pleaded unconscionability.[4] Accordingly, the claims barred by Simonton's warranties (Counts 1–7 and 11) must be dismissed.[5]

---

[4] Plaintiffs argue that UCC § 2-302 compels denial of the Motion. It provides: "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable[,] the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect." However, as discussed above, it does not "appear[] to the Court" that these contracts are unconscionable. Moreover, this UCC provision cannot trump the Federal Rules of Civil Procedure and transform otherwise implausible allegations into plausible ones, thereby insulating Plaintiffs' Complaint from dismissal. See, e.g., Jarrett v. Panasonic Corp. of N. Am., 8 F. Supp. 3d 1074, 1082 (E.D. Ark. 2013) ("Merely raising the specter of unconscionability" is not sufficient to overcome a Rule 12 motion); Ochman v. Wyoming Seminary, No. 3:12–cv–88, 2012 WL 5987133, *5 (M. D. Pa. Nov. 29, 2012).

[5] Plaintiffs also argue that the warranties fail to fulfill their essential purposes. Yet, "[a] repair or replace clause does not fail of its essential purpose so long as repairs are made each time a defect

Plaintiffs also allege Simonton intentionally or negligently made certain false representations about its windows "on its website and in print." (Compl. ¶ 38.) Federal Rule of Civil Procedure 9(b) imposes heightened pleading standards for both intentional and negligent misrepresentation claims—the Complaint must set forth specific details including the "the who, what, when, where, and how" surrounding the purported misrepresentations. Zimmerschied v. JP Morgan Chase Bank, N.A., 49 F. Supp. 3d 583, 591–92 (D. Minn. 2014) (Tunheim, J.) (citing Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2013)); see also Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) ("[A]ny allegation of misrepresentation . . . must be [pleaded] with particularity."). To state a claim of intentional misrepresentation, Plaintiffs must allege:

> (1) a false representation by [Simonton] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [Plaintiffs] to act in reliance thereon; (4) that the representation caused [Plaintiffs] to act in reliance thereon; and (5) that [Plaintiffs] suffered pecuniary damages as a result of the reliance.

Zimmerschied, 49 F. Supp. 3d at 591 (citing Valspar Refinish, Inc. v. Gaylord's Inc., 764 N.W.2d 359, 368 (Minn. 2009)). To state a claim of negligent misrepresentation, Plaintiffs must allege: (1) Simonton owed them a duty of care; (2) it supplied them false information; (3) they justifiably relied upon the information it provided; and (4) it failed

---

arises." Transp. Corp. of Am., 30 F.3d at 956. The Court perceives no reason a different result should obtain here, in the context of *replacement* rather than repair, where Plaintiffs acknowledge Simonton provided free replacement IGUs. See, e.g., Williams v. United Techs. Corp., No. 2:15-CV-04144-NKL, 2015 WL 7738370, at *5 (W.D. Mo. Nov. 30, 2015) (repair-or-replace clause does not fail of its essential purpose where warrantor provides replacement).

to exercise reasonable care in communicating the information. Williams v. Smith, 820 N.W.2d 807, 815 (Minn. 2012).[6]

In this case, Plaintiffs allege a slew of purportedly false statements by Simonton, including that its windows are "manufactured under the most stringent quality-control system and advanced technology in North America," and that "its future customers . . . will receive '[c]omforting service and support.'" (See Compl. ¶¶ 38–44.) But, in the Court's view, Plaintiffs' allegations concerning where and when these statements were made are fatally vague: they generically aver Simonton made these statements "on its website," "in print," and in "its promotional materials . . . repeatedly and continuously over the course of many years." (Compl. ¶¶ 38–39, 44.) Courts have rejected similarly imprecise allegations. E.g., Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), on reh'g, 710 F.2d 1361 (8th Cir. 1983) ("The location of . . . allegedly false statements is said to be a 'pamphlet,' 'promotional material,' or 'a typical life-care contract.' These allegations are not sufficiently particular to satisfy Rule 9(b)."); Superior Edge, Inc. v. Monsanto Co., Civ. No. 12-2672, 2013 WL 6405362, at *4 (D. Minn. Dec. 6, 2013) (Tunheim, J.) (allegation that statements were made "not later than May of 2011" fails to satisfy Rule 9(b)). Further, as discussed above, the Complaint fails to identify who considered and relied upon the purported misrepresentations. Plaintiffs have alleged only that "Simonton made some or all of the marketing misrepresentations . . . in order to induce *the purchaser*" and that the "*purchaser* . . . reasonably relied upon" them.

---

[6] The elements of these claims are not materially different in Arkansas, New York, or Wisconsin.

(Compl. ¶ 57 (emphases added).) Likewise, Plaintiffs allege, "[u]pon information and belief," that "the[se] representations . . . have been made by Simonton . . . to Plaintiffs and/or their predecessors in interest." (Compl. ¶ 44.) The Court is left to speculate whether some or all Plaintiffs are in fact the "purchasers" who allegedly relied upon these statements. See Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) ("Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement."). For these reasons, Plaintiffs' Complaint fails to satisfy Rule 9(b), and their fraud claims (Counts 8 and 9) will be dismissed.[7]

Finally, Plaintiffs allege Simonton has been unjustly enriched by retaining "profits from the sale of defective windows and from warranty labor and service charges against window owners." (Compl. ¶ 146.) To plead unjust enrichment, Plaintiffs must allege Simonton received something of value to which it was not entitled. Varner v. Peterson Farms, 371 F.3d 1011, 1018 (8th Cir. 2004) (applying Arkansas law). However, it is well established that an unjust-enrichment claim cannot succeed in the face of a valid contract governing the parties' rights. M.M. Silta, Inc. v. Cleveland Cliffs, Inc., 616 F.3d 872, 880 (8th Cir. 2010) (applying Minnesota law); N. Crossarm Co. v. Chem. Specialties, Inc., 318 F. Supp. 2d 752, 767 (W.D. Wis. 2004) (applying Wisconsin law: "Unjust enrichment is not a mechanism for correcting soured contractual arrangements.");

---

[7] Although the Court need not (and does not) reach the issue, it notes that the allegedly fraudulent statements resemble nonactionable puffery. See, e.g., Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007) ("[A] company's website is a marketing tool. Often, marketing material is full of imprecise puffery that no one should take at face value."); United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998) ("Nonactionable puffery includes representations of product superiority that are vague or highly subjective.").

Campbell v. Asbury Auto., Inc., 381 S.W.3d 21, 37 (Ark. 2011); G & S Custom Homes, Inc. v. Holtz, 179 A.D.2d 1025, 1025 (N.Y. App. Div. 1992). That is the case here: Plaintiffs (or the amorphous window "purchasers") entered into valid warranties limiting their ability to recover against Simonton. In the Court's view, Plaintiffs unjust-enrichment claim is simply another attempt to skirt these warranties and, as such, must fail. Count 10 will be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Simonton's Motion to Dismiss (Doc. No. 12) is **GRANTED.** Counts 1–7 and 10–11 of Plaintiffs' Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE**, and Counts 8 and 9 are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: April 17, 2017                         s/Richard H. Kyle
                                             RICHARD H. KYLE
                                             United States District Judge